McManamee v. Mo. Pac. R'y Co.

McManamee, *Appellant*, v. Missouri Pacific Railway Company.

### Division Two, October 7, 1896.

1. Pleading: NEGLIGENCE. Where a general averment of negligence in a petition is followed by an enumeration of specific facts of negligence, the plaintiff will be restricted to proof of the facts so specified.

2. Railroad: CONTRIBUTORY NEGLIGENCE: INSTRUCTION. An instruction, defining contributory negligence, is proper in an action to recover for the negligent killing of a person who was struck by a railway train, where it appeared that he went upon the track immediately in front of the approaching train.

3. ———: ———: ———. An instruction in such case, that if deceased went upon the railroad track, after he saw the train approaching, and after he could have avoided the injury, for the purpose of saving his horse and buggy from collision with the train, and in so doing, was himself struck and killed, there could be no recovery for his death, properly states the law.

4. ———: ———: ———. It was negligence on the part of the deceased to leave his horse and buggy standing without being tied, in close proximity to the railway track, and if in consequence of such conduct the horse went upon the track, and the deceased in attempting to save his property, was struck by the train and killed, he was guilty of contributory negligence precluding a recovery.

5. ———: DUTY TO SOUND BELL: CONTRIBUTORY NEGLIGENCE. Whether the whistle was sounded or the bell rung by those in charge of a railway train, is immaterial in an action for the killing of a person who saw the train approaching in time to have avoided the danger.

*Appeal from St. Louis County Circuit Court.*—Hon. W. W. Edwards, Judge.

Affirmed.

*A. R. Taylor* for appellant.

(1)   The first instruction given at the request of the defendant is fatally defective, in that it eliminated

from the consideration of the jury the common law negligence alleged and proven. Any number of negligent acts preceding the injury, and contributing to it, may be pleaded, and any one proven will entitle a recovery. *Hill v. Railroad*, 121 Mo. 482, affirming same case, certified from St. Louis court of appeals, 49 Mo. App. 534. (2) The law is precisely the contrary to the doctrine stated in the second instruction given for defendant. *Fiedler v. Railroad*, 107 Mo. 645; *LeMay v. Railroad*, 105 Mo. 361; *Guenther v. Railroad*, 108 Mo. 18; *Chamberlain v. Railroad*, 33 S. W. Rep. 441. (3) The fourth and fifth instructions given for defendant were also erroneous.

*M. L. Clardy* and *H. G. Herbel* for respondent.

(1)   The first instruction given for defendant was proper. *Watson v. Railroad*, 133 Mo. 246; *Fuchs v. Railroad*, 133 Mo. 168; *Waldhier v. Railroad*, 71 Mo. 515; *Railroad v. Eason*, 35 S. W. Rep. 209; *Maloy v. Railroad*, 84 Mo. 275; *Smith v. Railroad*, 47 Mo. App. 550. (2) The criticism of defendant's second instruction is without merit. *Watson v. Railroad*, 133 Mo. 246. (3)   The difficulty with counsel's argument is that he assumes that the whole duty of avoiding injury to plaintiff's husband rested on the defendant, whereas this court has uniformly held that an equal degree of care is by law imposed upon the traveler. *Lane v. Railroad*, 33 S. W. Rep. 651; *Kelsay v. Railroad*, 30 S. W. Rep. 339; *Hayden v. Railroad*, 124 Mo. 566.

GANTT, P. J.—John McManamee was struck by a locomotive engine of the Missouri Pacific Railway Company near the junction of Poplar street and the levee, in the city of St. Louis, on the thirty-first day of January, 1891, and died from the injuries thus received.

This action is by his widow, Mrs. Mary A. McManamee, and is founded on the alleged negligence of the company in negligently managing and controlling its said engine and train attached thereto, and violating an ordinance forbidding the company to run its cars at a speed exceeding six miles an hour along said streets, and neglecting to cause the bell on said engine to be rung constantly while running along said streets, and failing to have a watchman at the intersection of said streets to warn persons of the approach of its trains.

The defense was a general denial, plea of contributory negligence, and that the ordinance regulating the speed to six miles an hour was void.

The evidence tended to prove that plaintiff was the wife of deceased; that deceased was killed by a train of defendant on its track on Poplar street; that the levee and Poplar street are public streets of said city.

On the day deceased was killed he went with a single horse and wagon to get some bricks lying on the levee, near the western curb thereof, and about eighty feet from where defendant's track curved from the levee west up Poplar street. While deceased was loading the bricks into his wagon the horse was not hitched in any way and started to walk away and then quickened its pace to a trot northward. The deceased immediately pursued and overtook the horse upon defendant's track on the curve. The horse on reaching the track turned west with the track into Poplar street and continued along or on the defendant's track. Deceased crossed from the south side of the track to the north side and reached the head of the horse, caught the bit or rein, and endeavored to get him off the track, when an engine attached to defendant's train and pulling about twenty-five freight cars, struck the rear end of the wagon and threw it to the south side of the track and crushed it. The horse either broke loose or was

McManamee v. Mo. Pac. R'y Co.

torn loose by the collision, and escaped without injury up Poplar street. Deceased was caught by the cylinder of the engine on the north side, thrown down and dragged about thirty feet by the side of the engine as it moved west, and was either dropped or pulled out by some bystanders.

The engine and train were moving at a greater speed than six miles an hour. There was ample evidence that the bell was not constantly rung as required by ordinance. There was also evidence that the engineer was warned to stop while the engine was one hundred and ninety feet from deceased, and also that the deceased, who was a man nearly sixty years old, was warned to keep off the track but that he paid no attention to it, but hurried to catch the horse, and while pulling at the horse was struck and killed. The evidence tended to show he went on the track only a few feet in advance of the approaching engine which could have been readily seen by the exercise of ordinary care.

The verdict of the jury was for the defendant and the plaintiff, after an unsuccessful motion for new trial, appealed to this court. This cause has been on file since September, 1892, but counsel have continued it from time to time until this term, and have only favored us with briefs since the last call of the docket. There can be little excuse for such delays. Appeals prosecuted in good faith should be followed with more industry.

The grounds, upon which a reversal of the judgment is sought, are alleged errors in the instructions.

The instructions are as follow: The court at the request of the plaintiff gave the following instructions to the jury: .

1. "The court instructs the jury that the ordinance of the city of St. Louis, read in evidence, in re-

lation to the speed of defendant's train and the ringing of the bell was in force at the time of the injury to John McManamee, and that defendant at said time had no legal right to run its said train, at the place of the injury, at a greater rate of speed than six miles per hour; and if defendant was at said time running its said train at a higher rate of speed than six miles per hour, and did thereby directly cause the injury and death of said McManamee; and if the jury further find that said McManamee was at the time exercising ordinary care, then defendant is liable.''

2. ''If the jury finds from the evidence in this case that the plaintiff was the wife of John McManamee at the time of his death; and if the jury further find from the evidence that said John McManamee was struck by defendant's engine, and so injured that he died from said injury at the city of St. Louis; and if the jury further find from the evidence that said John McManamee was caused to be so struck and injured by reason of defendant's servants in charge of said engine, at said time, causing said engine to be run at a higher rate of speed than six miles per hour (if the jury find that said engine was run at said time at a higher rate of speed than six miles per hour); and if the jury find that said John McManamee, at the time of his injury, was exercising ordinary care under the circumstances, then the jury should render a verdict for the plaintiff for five thousand dollars.''

3. ''Although the jury find from the evidence that John McManamee went on defendant's track to attempt to remove his horse therefrom, and that in doing so he was not exercising ordinary care; yet if the jury find further from the evidence that defendant's servants in charge of its engine and train either saw said deceased upon defendant's track or near same, and in danger of injury from defendant's engine, or by the exer-

cise of ordinary care could so have seen said deceased upon said track and in danger of injury, and by the exercise of ordinary (care) after so seeing said deceased in such danger, could have averted injury from said deceased, and yet neglected to do so, and in consequence of which deceased was killed, then plaintiff is entitled to recover five thousand dollars.''

The court, at the request of the defendant, gave the following instructions:

1. ''The court instructs the jury that the plaintiff in her petition claims the right to recover upon the following grounds:

''*First.* That the engine which struck her deceased husband was running at a rate of speed exceeding six miles per hour.

''*Second.* The bell of the engine by which he was struck was not being constantly sounded.

''*Third.* , That the defendant did not have a watchman stationed at said crossing to give warning of the approach of trains.

''The burden of proving these alleged acts of negligence is upon the plaintiff to show that they, or some one of them, were the sole cause, so far as the deceased is concerned, of the accident. In addition to denying the foregoing charges made in the plaintiff's petition, the defendant relies upon the following affirmative facts as a defense:

''*First.* That the deceased might, by the exercise of ordinary care for his own personal safety, have avoided the collision with the engine.

''*Second.* That the deceased was further negligent in not properly securing his horse from running away. If you find the defendant has proven either of these facts, and you find that they contributed to the injuries and death of the deceased, then you must find your verdict for the defendant, although you may find it

guilty of negligence, as hereinbefore stated, to be charged against it by the plaintiff, unless the defendant saw the danger, and might thereafter have avoided or prevented the same by the exercise of ordinary care.

2.   "The rule of law is that where both parties are at fault neither can recover, and you are instructed that if the deceased could have avoided the accident to himself, although the defendant's servants may have been guilty of negligence, then the plaintiff can not recover, and you must find for the defendant.

3.   "While it may have been the duty of defendant's servant to make all reasonable efforts to stop the train and avoid the collision, yet the like duty devolved upon the deceased, and if, after he saw the train coming, or might, by looking and listening, have seen it coming, he could have gotten out of its way, or kept out of its way, but did not, then the plaintiff can not recover; and even should the jury believe that the deceased's horse and wagon was exposed to a collision with defendant's train, this would not excuse or justify him precipitating himself in front of the train, and if you find he did so in order to save his said horse and buggy, then your verdict must be for the defendant.

4.   "The court instructs the jury that if they believe from the evidence that the horse in charge of the deceased McManamee was attached to a wagon, and was standing on the levee at the time of the accident without being fastened or so guarded as to prevent its running away, and that said horse ran away and deceased was injured in consequence of its not being fastened or guarded they will find their verdict for the defendant.

5.   "The court instructs the jury that if they believe from the evidence that the deceased McManamee, saw the engine approaching or knew of its approach before he got upon defendant's track, then the

failure of defendant's servants to ring the bell of the engine, if a fact, is immaterial and plaintiff is not entitled to recover on that ground of negligence."

I.   It is urged that the first instruction given on behalf of the defendant was erroneous in that it eliminated all right of recovery based on common law negligence in contradistinction to the specific negligence charged in violating the several city ordinances.   This contention of plaintiff is predicated on the general allegation that "her husband was so caused to be run over and killed through the negligence, carelessness, and unskillfulness of defendant's agents and servants in charge of its said engine and cars whilst running, conducting, controlling, and managing the same," which averment she followed and supplemented immediately by averring the existence of the ordinances forbidding the running of trains by defendant at a greater speed than six miles an hour, and requiring the bell on its engine to be constantly rung, and to maintain a watchman at the crossing to give warning of the approach of its trains, and alleging that the defendant failed to observe these ordinances and this negligence caused her husband's death.

The practice is well established in this state that when a general allegation of negligence, like this, is followed by an enumeration and averment of specific acts of negligence, the plaintiff will be confined to the negligence specifically assigned.   It follows that the court did not err in restricting the plaintiff's recovery to proof of one of those specific grounds of negligence. *Watson v. Railroad*, 133 Mo. 246.   When specific negligence is charged such general allegations used in connection with the specific charge do not admit of proof of negligence other than that specifically stated.   *Waldhier v. Railroad*, 71 Mo. 515; *Schneider v. Railroad*, 75 Mo. 295.

But this assignment of error must fail for another reason. If plaintiff sought to recover on the ground that notwithstanding deceased was negligent in going upon the track defendant was liable if its servants in charge of the train saw his danger and might have avoided injuring him by the exercise of ordinary care, it was her plain duty to have averred this negligence, and no such issue was properly before the jury. Notwithstanding this the court did modify its instructions so as to hold the defendant culpable if it "saw the danger and might thereafter have avoided or prevented the same by the exercise of ordinary care."

Moreover, the court gave plaintiff the full benefit of this principle of law in her own instruction number 3. It is evident that notwithstanding the defect in her own pleading she has no ground of complaint on this score against the trial court.

II. The second instruction merely stated the well recognized rule of law that if plaintiff's husband's own negligence directly contributed to his injury and was the proximate cause thereof she could not recover, although defendant was guilty of negligence in omitting the signals required by the ordinances, or in running in excess of the speed allowed thereby. The instruction is not happily worded and can not be commended as a precedent, but in view of the other instructions we do not think could have misled the jury.

An instruction defining contributory negligence was peculiarly appropriate to the facts disclosed. The deceased went upon the track when he must have seen the approach of the train and his act in so doing might well have been found by the jury to have been the immediate, direct, and proximate cause of his death and if so plaintiff could not recover. *Watson v. Railroad*, 133 Mo. 246; Beach on Contributory Neg., sec. 56.

III.   There was no error in giving the third instruction.   It announces a correct principle of law too long recognized in this state to require reasons or authority in its support.

IV.   The fourth instruction does not seem to be based upon the ordinance against leaving horses and teams loose and unhitched in the public streets, but proceeds upon the obvious truth that it was negligent to leave the horse loose in the immediate vicinity of the railroad track, along which trains propelled by steam engines might move at any moment, and if in consequence of this negligent act plaintiff's husband was led into another act of negligence, the immediate and natural consequence of the first, which last was the immediate cause of his injury, then plaintiff could not recover and there was no error in so saying to the jury.

V.   The statutes of the state, and the ordinances requiring whistles to be sounded, or bells to be rung on trains, are designed and intended to warn people of the approach of such trains, and if a person approaching a track sees a train approaching on it, it is his duty to avoid going upon it until the danger of collision with the train is passed.   If he sees the train it is immaterial, so far as he is concerned, whether the signals are given or not, as they could add nothing to his safety which must depend, after he sees the train, upon his own care in avoiding injury.   This is all there was in the instruction, and it was appropriate under the circumstances and constituted no error.

The verdict appears to have been for the right party. It seems to us, as doubtless it did to the jury, that the death of deceased was due to his negligent disregard of his own safety in his efforts to save his team by running immediately in front of the moving train and so

close to it that the engineer could not stop in time to save him after he saw him.    The judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.